## Schwilm et vir v. Pennsylvania Sports, etc.

*Recht & Recht*, for plaintiffs.
*James J. Burns, Jr.*, for defendant.

MARSHALL, J., January 30, 1952.—Plaintiffs, husband and wife, were spectators at an ice hockey game held at Duquesne Gardens, Pittsburgh, Pa. They were

seated· to the right, behind the goal cage, at one end of the ice rink. During the game, one of the hockey players hit the puck over the glass barrier, which struck wife plaintiff in the head, while she was seated in the fifth row behind the goal cage. She had previously attended one ice hockey game, but she testified that she had not seen any puck leave the ice rink, and had no knowledge that such might happen. Her husband, on the contrary, often attended ice hockey games, and he was aware that pucks were occasionally hit from the ice rink into the stands.

Before November 26, 1947, defendant had made changes in the seating arrangement behind the easterly goal cage. It had raised the seating level by construction of a wooden platform and stepping up the seats. The defendant did not raise the glass barrier behind the easterly goal cage, so that the patrons so seated in the fifth row, behind the easterly goal cage, were unprotected.

The court submitted wife plaintiff's case to the jury, who found in her favor for $2,500, and the court gave a directed verdict against husband plaintiff.

Defendant company now moves for judgment n. o. v. as to wife plaintiff. A motion for a new trial was filed on behalf of husband plaintiff.

### Discussion

This matter, we believe, has never been before our appellate courts. The question which is to be decided is, is the wife plaintiff guilty of assumption of risk?

This question has been decided in various appellate courts. The argument is made that this case is analogous to a spectator at a baseball game. The highest courts in a considerable number of States have affirmed verdicts in favor of spectators injured by flying pucks at hockey games. The courts that have so decided include Rhode Island, Massachusetts and

Nebraska, and we believe that appellate courts in Ohio and in California have held likewise. We are not unmindful that there are decisions of other States holding to the contrary, and we are also not unmindful of the fact that our appellate courts have held that spectators at baseball games assume the risk. However, it seems to us that it would be a needless waste of time to cite all the cases set forth by the attorneys on each side. We are personally of the opinion that the wife plaintiff, not having been a regular attendant at ice hockey games, and sitting at the rear behind the goal cage at which the players shoot, had a right to rely on the protection afforded. Defendant company had supplied some protection at the ends of the rink, but this protection was inadequate. Having assumed this duty of protection, it is our opinion that defendant company was responsible for not having afforded a protection which was adequate. If plaintiff had been a spectator, and was seated at a position on one of the sides of the rink, we would hold otherwise. Our experience is that the heavy dangerous puck is shot with great force at the goal cage, and that spectators back of the cage are exposed to a great danger. Not having been aware by any previous experience of this condition, we believe that the wife plaintiff is entitled to recover, but the husband plaintiff, being a frequent attendant at hockey games, knew of this danger, and he cannot say that he did not realize that he might be injured. It is a well-known fact that pucks frequently do enter the seats behind the goal cages.

### Orders of Court

And now, to wit, January 30, 1952, motion ex parte defendant for judgment n. o. v. as to Ruth Schwilm is refused, and judgment is ordered to be entered upon payment of verdict fee.

And now, to wit, January 30, 1952, motion ex parte plaintiff to take off directed verdict as to John Schwilm is refused, and judgment is ordered to be entered upon payment of verdict fee.

Eo die, exception noted and bill sealed.